JULIE A. GOLDBERG, ESQ., SBN 235565
Goldberg & Associates
5586 Broadway, Third Floor
Bronx, NY 10463
Tel: (718) 432-1022
Email: ecf@goldbergimmigration.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAMOOD ALI ALZOKARI; MOHAMED HAMOOD ALI ALZOKARI<br><br>                    *Plaintiffs,*<br>v.<br><br>MICHAEL POMPEO, Secretary of State; CHAD WOLF, Acting Secretary of the Department of Homeland Security; MARK KOUMANS, Acting Director, United States Citizenship and Immigration Services; DEVIN KENNINGTON, Chief Consular Officer United States Embassy Djibouti; UNITED STATES EMBASSY DJIBOUTI; UNITED STATES IMMIGRATION AND CITIZENSHIP SERVICES; UNITED STATES DEPARTMENT OF STATE;<br>                    *Defendants.* | Case No: 20-3610<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## PRELIMINARY STATEMENT

1. This is an action under the Fifth Amendment of the Constitution of the United States of America, Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking injunctive, declaratory and other appropriate relief, resulting from the bad faith denial of Plaintiff Mohamed Hamood Ali

Alzokari visa waiver under Presidential Proclamation 9645 (the "Proclamation"), which has violated Plaintiff Hamood Ali Alzokari's right to due process of law under the Fifth Amendment of the Constitution.

2. Plaintiffs are a 61-year old United States Citizen father ("Mr. Alzokari"), who is severely ill with cancer, and his son ("Mohamed") who is the beneficiary of an approved I-130 Petition for an Alien Relative filed by Mr. Alzokari, as well as an approved waiver of inadmissibility under 8 U.S.C. § 1182(i) based on the extreme hardship that both he and his father are suffering and continue to suffer to this day from his exclusion from the United States.

3. Defendants have provided a constantly changing and internally illogical and contradictory justifications for delaying and denying Mohamed's waiver Proclamation waiver. The bad faith adjudication includes first approving the waiver (Exhibit LL); then requesting evidence to complete the adjudication (Exhibits LL-NN); then claiming Mohamed provided the wrong evidence even though Mohamed provided the exact evidence requested (compare Exhibit QQ with Exhibit LL); then claiming that Mohamed's visa would be issued (Exhibit TT) and then stating this notice was sent in error (Exhibit UU); and then after Mohamed satisfied every possible request Defendants' could make, Defendants' claim the visa was denied on October 3, 2019 (Exhibit XX) while they simultaneously representing that on October 17, 2019 they were continuing to adjudicate the waiver application, that was already approved twice. (Exhibits VV-WW).

4. Defendants actions constitute nothing more than a complete disregard for the laws of the United States; a Constitutional order of a nation governed by the rule of law; and

reflecting the precise suspicions of the four dissenting justice in *Hawaii v. Trump:* "How could the Government successfully claim that the Proclamation rests on security needs if it is excluding Muslims who satisfy the Proclamation's own terms? " *Trump v. Hawaii*, 138 S. Ct. 2392, 2430 (2018) (Breyer, J. dissenting).

5.  Mr. Alzokari has simply attempted to avail himself of his rights as a United States Citizen to sponsor his son for an  immigrant visa to come live with him in the United States in the last few months he has left. This simple attempt to avail himself of his rights as a United States Citizen has added significant for Mr. Alzokari, as his actions have the effect of saving Mohamed from continuing to live in the middle of a warzone and reuniting Mohamed with Mr. Alzokari, his mother, and five siblings -- all of whom are either citizens or legal permanent resident of the United States -- as Mr. Alzokari continues his long battle with cancer.  Mr. Alzokari is simply asking to be treated the same as other American Citizens, while pursuing his legal rights to sponsor his son to reside with him in the United States before he dies, while simultaneously allowing Mohamed to escape a terrible humanitarian crisis. (Exhibits N-GG).

6.  Defendants at every turn seem intent on preventing Mohamed from reunited with his family (Exhibit M- DNA testing results establishing Mr. Alzokari and his wife as Mohamed's biological parents). This compulsive desire to harm Plaintiffs and strand Mohamed in the middle of warzone while his father battles cancer has led Defendants to violate the Mr. Alzokari's constitutional rights, distort the truth, outright lie to Plaintiffs and their counsel regarding the proceedings, and have made a mockery of the idea that

agency adjudications reflect evidence-based deliberations and neutral application of the law to the facts.

7. Put simply, Defendants have not provided any justification for the denial of Mohamed's waiver other than their belief that their illegal actions will not be reviewed by a Court. Agency action predicated on the belief that the agency will never be held accountable is the cornerstone of the Administrative Procedure Act's judicial review provisions, which sought to remedy the harm of agency "decisions affecting private rights and conduct" that were little more than "rationalizations of the preliminary findings" where the agency "in the role of prosecutor, presented to itself." *Administrative Procedure Act Legislative History*, 79th Congress, 1955-46, Senate Doc. No 248 p. 189 (quoting *Report Of President's Committee on Administrative Management* 1937 p. 39-40)

8. Plaintiffs now seek relief before this honorable Court in order to compel Defendants to faithfully and legally execute their duties under federal law.

## JURISDICTION AND VENUE

9. This court has both subject matter jurisdiction over this pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

10. Venue lies in this district pursuant to 5 USC. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a) as Plaintiff Mr. Alzokari resides in this district.

## PARTIES

### Plaintiffs

11. Plaintiff Hamood Ali Alzokari (Mr. Alzokari) is a United States Citizen who resides in Brooklyn, New York. Mr. Alzokari is the father of Plaintiff Mohamed Hamood Ali

Alzokari (Mohamed). Mr. Alzokari filed an I-130 Petition for Alien Relative on behalf of Mohamed, which has been approved and allows Mohamed to apply for a visa to enter and reside in the United States. Thus Mr. Alzokari has a fundamental interest in Mohamed's admission to the United States. Mr. Alzokari has standing to challenge Defendants' refusal to issue a visa to Mohamed. See *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)["we agree that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."]. Further, Mr. Alzokari was the qualifying relative whose extreme hardship by the exclusion of Mohamed from entry to the United States was the basis upon which Defendants USCIS approved a waiver under 8 USC § 1182(i) for Mohamed on April 9, 2018 (Exhibit JJ).

12. Plaintiff Mohamed Hamood Ali Alzokari is a national of Yemen and currently resides in Yemen. Mohamed is the son of Plaintiff Mr. Alzokari and is the beneficiary of a Form I-130 Petition filed by Mr. Alzokari.

**<u>Defendants</u>**

13. Defendant MICHAEL R. POMPEO is the Secretary of the defendant UNITED STATES DEPARTMENT OF STATE ("DOS"). Defendant Secretary is generally charged with the overall management and administration of the immigrant visa issuance process under the immigration laws of the United States. Defendant Pompeo is sued in his official capacity as DOS Secretary.

14. Defendant CHAD WOLF is the Acting Secretary of the DEPARTMENT OF HOMELAND SECURITY ("DHS"). DHS is the federal agency responsible for implementing the Immigration and Nationality Act ("INA"). Defendant Wolf is generally

charged with the enforcement of the INA and is responsible for implementing the provisions of the INA. Defendant Wolf is further authorized to delegate such powers and authority to subordinate DHS employees. See 8 U.S.C. §1103(a); 8 C.F.R. §2.1. Defendant Wolf is sued in his official capacity as Acting DHS Secretary.

15. Defendant MARK KOUMANS is the Acting Director of the United States Citizenship and Immigration Services. USCIS is the subagency within the DHS which is responsible for adjudicating applications for benefits under the INA, including Plaintiffs' I-130 Petitions. Defendant Koumans is sued in his official capacity.

16. Defendant DEVIN KENNINGTON, is the Chief Consular Officer of the United States Embassy Djibouti. In his position Defendant Kennington is responsible for oversight and administration of all visa adjudications, issuances, and refusals at the Djibouti Embassy. Defendant Kennington is sued in his official capacity.

17. Defendant UNITED STATES EMBASSY DJIBOUTI is a component of Defendant DOS and is the embassy which refused Ms. Alzkokari's visa application and waiver in bad faith.

18. Defendant USCIS is an agency within DHS, which oversees lawful immigration to the United States with the stated mission of securing America's promise as a nation of immigrants. This includes the processing of visa petitions and applications for various immigration benefits.

19. Defendant DOS is a cabinet department of the United States federal government with the mission of shaping and sustaining a peaceful, prosperous, just, and democratic world and

fostering conditions for stability and progress. DOS conducts consular interviews of visa applicants and decides whether to approve or deny visa applications.

## STATEMENT OF FACTS

20. Mr. Alzokari is the 83-year-old father of Plaintiff Mohamed and has been a United States Citizen since April 9, 1997. (Exhibit A). Further, Mr. Alzokari is also the father of Mohamed's three United States Citizen siblings; two legal permanent resident siblings; the husband of Mohamed's legal permanent resident mother; and the grandfather of Mohamed's United States Citizen nephew. (**Exhibit A-M**).

21. On September 14, 2016, Mohamed was determined by a consular officer to be inadmissible under 1182(a)(6)(C)(i). However, Mohamed subsequently applied for a 212(i) waiver before USCIS which was approved on April 9, 2018. (Exhibit HH), which required Mohamad to establish extreme hardship to his United States Citizen father and establish that his waiver is worthy of a discretionary grant of approval, which includes establishing that Mohamed is not a public or national security threat. Thus, the 212(i) waiver requirements mirror the Proclamation waiver requirements, but require a much higher threshold for approval: "extreme hardship" instead of "undue hardship." Put simply, it is impossible to qualify for 212(i) waiver without first meeting the eligibility requirements of a Proclamation waiver.

22. The waiver approval was based on hardship suffered by Mr. Alzokari and Mohamed based on Mr. Alzokari's on-going treatment of prostate cancer and the danger and hardship Mohamed continues to suffer in Yemen, including the need for financial assistance from Mr. Alzokari and his United States citizen family members because of his

inability to find work in Yemen due to the on-going civil war. (Exhibits N-GG, ZZ, AAA).

23. Mohamed reapplied for a visa but was refused a waiver under the Proclamation on May 17, 2018. (Exhibit JJ). At this point, the waiver request would be reviewed for eligibility; the visa application placed in administrative processing; and the waiver application forwarded to the State Department Visa Office in Washington, D.C. for formal approval.

24. On April 11, 2019, the Djibouti Consulate confirmed this process by email informing Plaintiffs' counsel that Mohamed's visa application was "undergoing routine administrative processing" because the "U.S. Embassy in Djibouti has ***recommended*** that this case be considered for a waiver to the proclamation." (Exhibit KK).

25. On or about April 30, 2019 Mohamed's Proclamation waiver was approved, when the Djibouti Embassy sent an email stating a waiver under Presidential Proclamation 9645 was approved but the visa remained refused under INA 221(g) and that "to overcome this refusal, you must provide the following items: Medical Exam; Police Certificate from Yemen; Joint Sponsor I854A + Tax Return.". (Exhibit LL).

26. This request for information conforms with the process DOS has established to bring a visa application back up to date after an approval of a Proclamation waiver where certain requirement documents and certifications may have expired and is explicitly separate and distinct from the Proclamation waiver process and is controlled by the requirements of the INA and its implementing regulations (See Exhibit CCC - February 22, 2019 Van Hollen Letter).

27. On May 19, 2020 all the requested information was provided to the Embassy. (Exhibit NN).

28. On June 2, counsel requested that Mohamed be allowed to drop off his passport at the Embassy to finalize processing his visa. (Exhibit OO).

29. On June 16, the Djibouti Embassy requested that Mohamed drop off his passport to complete the visa adjudication process. (Exhibit PP).

30. Mohamed appeared before the US embassy in Djibouti on August 14, 2019 to re-oath as the time lapse caused the previous oath to expire and the consular officer told him that his visa will be ready to pick up by on August 26, 2019. (Exhibit RR).

31. Upon follow up by counsel, on September 12, 2019 the Djibouti Embassy stated: "This case is currently refused under INA section 221g. To overcome this refusal, the joint sponsor should submit the form I-864. They previously submitted the form I-864A." (Exhibit QQ). Even though the Embassy had only specifically requested Form I-864-A (Exhibit LL).

32. On September 12, 2019, counsel emailed to the Djibouti Embassy the Form I-864 and associated documents (Exhibits RR), receipt of which the Djibouti acknowledged and "added to the file" on September 15, 2019. (Exhibit SS).

33. On September 30, 2019 the Djibouti Embassy emailed "The visa for case DJI2016637027 will be ready for collection from the U.S. Embassy in Djibouti on Thursday, October 3, at 2:00pm." (Exhibit TT).

34. Shortly after the previous email, again on September 30, 2019, the Djibouti Embassy emailed counsel stating: "Please disregard the message that was just sent regarding case DJI2016637027." (Exhibit UU).

35. On October 17, 2019 the Djibouti Embassy emailed counsel stating "This message is confirmation that we have received the item(s) you submitted in order to overcome your 221g refusal. We will contact you if we need additional information." (Exhibit VV)

36. After submission of the required information -- none of which negatively impacted Mohamed's eligibility for a Proclamation waiver or under DOS guidance even related to the Proclamation waiver adjudication -- and Mohamed's passport, the Djibouti Consulate still did not provide Mohamed with his visa or updated.

37. However, inexplicably, upon counsel's inquiry on October 31, 2019 the Djibouti Embassy emailed counsel stating: "Case DJI2016637027 was refused appropriately per Presidential Proclamation 9645", despite the fact that the office, embassy and state department had approved it twice. The email  "***The Department of State has determined that the visa applicant is not eligible for a waiver of the proclamation.***  Our records indicate *a refusal letter describing the ineligibility was provided to a representative of your office on October 3, 2019.***"** (Exhibit XX).

38. However, this information directly contradicts the October 17, 2019 emails from the Djibouti consulate stating they were in receipt of the documents necessary to over the 221(g) refusal (Exhibit VV); an email which was sent two weeks AFTER the purported denial on October 3, 2019. Further, the DOS online portal showed Mohamed's cases was undergoing Administrative Processing on October 17, 2019. (Exhibit WW).

39. The Consular Officers representation further violates the requirements that the consular officer, not the Department of State make final determinations regarding Proclamation waiver adjudications. Here, the record establishes that after the Djibouti Embassy "recommended" to the Department of State the waiver was granted by the Djibouti consular officer.

40. As recently as July 2, 2020, the Djibouti Embassy continues  maintains that the waiver was refused on October 3, 2019 because the Department of State determined Mohamed was ineligible (Exhibit YY), even though the Proclamation waiver merely requires that an applicant duplicate the same requirements for a 212(i), but reducing the standard from "extreme hardship" to requiring the applicant to "demonstrate" that denial of entry "would cause undue hardship, . . . would not pose a threat to national security, . . . and would be in the national interest." Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), § 3(c); see also 9 FAM 302.14-10(C)(1)(a)(1-3).

41. However by already possessing an approved 212(i) waiver, Mohamed necessarily satisfied the Proclamation waivers standards and at a minimum establishes *eligibility* as a matter of law for a Proclamation waiver.

42. Further, under DOS's own guidance, Mohamed had already been approved for a waiver and was supplying documentation required by the "Immigration and Nationality Act or its implementing regulations" (Exhibit BBB - February 22, 2019 Van Hollen Letter) and was not part of the Proclamation waiver process. A determination by DOS at this point would be an improper adjudication of a consular officers determination of the factual findings in a visa determination in violation of 8 U.S.C. § 1104(a) which provides

exclusive authority to consular officer to make visa determinations; and in violation of 22 C.F.R. § 42.81(d) which provides that consular officers' "application of the law to the facts" in a visa adjudication are not controlled by State Department determinations.

### LEGAL FRAMEWORK REGARDING VISA REFUSALS

43. The first step in the visa application process for the son of an United States citizen is the approval of an I-130 Visa Petition filed by the United States Citizen petitioner[1]. See, 8 U.S.C. § 1154.

44. 22 C.F.R. § 42.41(a) titled "Entitlement of status" provides that immediate relatives and family preference relative of United States citizens are entitled to an immigrant visa upon receipt by the consular from USCIS of an approved I-130 petition or official notification of an approved petition.

45. Defendants further possess a mandatory duty to complete the consular processing of Plaintiff's visa applications. 22 C.F.R. § 42.81 explicitly requires "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." *See also, Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997); *America Academy of Religion v. Chertoff*, 463 F.Supp.2d 400, 420-422 (S.D.N.Y. 2006).

46. A visa refusal requires, at a minimum, the government to provide a "facially legitimate and bona fide" reason for refusal, which in turn requires "the identification of both a

---

[1]

https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited August 10, 2020).

properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason." *American Academy of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009).

47. Upon a finding on inadmissibility, a visa applicant can apply for a waiver of the grounds of inadmissibility.

**WAIVER OF INADMISSIBILITY UNDER 8 U.S.C. § 1182(i)**

48. 8 U.S.C. § 1182(a)(6)(iii) provides that that a waiver of inadmissibility under 8 U.S.C. § 1182(a)(6)(i) is provided for under the procedures under 8 U.S.C. § 1182(i), which provides: "The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) in the case of an immigrant who is the spouse, son, or daughter of a United States citizen … *if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship* to the citizen or lawfully resident spouse or parent of such an alien." 8 U.S.C. § 1182(i)(1).

49. "The factors to be used in determining whether an alien has established extreme hardship pursuant to section 212(i) of the Act include, but are not limited to, the following: the presence of lawful permanent resident or United States citizen family ties to this country; the qualifying relative's family ties outside the United States; the conditions in the country or countries to which the qualifying relative would relocate and the extent of the qualifying relative's ties to such countries; the financial impact of departure from this country; and, finally, significant conditions of health, particularly when tied to the

13

unavailability of suitable medical care in the country to which the qualifying relative would relocate." *Matter of Cervantes-Gonzalez (PDF)*, 22 I&N Dec. 560, 566 (BIA 1999).

50. Finally, after the extreme hardship determination, USCIS must grant the waiver, as a matter of discretion, which necessarily includes a finding that the the applicant does not pose any public safety or national security concerns. See, e.g. *Matter of Jean*, 23 I&N Dec. 373 (A.G. 2002)

**WAIVER PURSUANT TO THE PRESIDENTIAL PROCLAMATION**

51. The Proclamation provides that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis. . . ." Presidential Proclamation No. 9645, 82 Fed. Reg. at 45168 (Sept. 27, 2017). A waiver is available for individuals who can "demonstrate" that denial of entry "would cause undue hardship, . . . would not pose a threat to national security, . . . and would be in the national interest." Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), § 3(c); see also 9 FAM 302.14-10(C)(1)(a)(1-3).

52. The standards for waiver of adjudication have been provided for in the DOS Foreign Affairs Manual ("FAM"), portions of which are withheld from the public. However, the waiver standards have been explained by DOS in letters from the Assistant Secretary of Legislative Affairs of DOS to Senator Van Hollen dated February 22, 2018 and February 22, 2019 ("Van Hollen Letters"). (Exhibit BBB; Exhibit CCC).

53. In evaluating the legal standards, the facts of the record clearly indicate that the consular officer's determination was made in bad faith as USCIS had already found that Mohamend had met these standards under a higher burden of proof.

**Undue Hardship**

54. DOS indicated that in order to satisfy the undue hardship criterion, "the applicant must demonstrate to the satisfaction of the consular officer that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of the travel." (Exhibits BBB, CCC).

55. Undue hardship is necessarily a lower standard than "extreme hardship. *See*, *e.g.*, *In Re E-L-H*, 23 I&N Dec. 700 (A.G. 2004) (undue hardship standard not met because of applicants failure to show, for example, that his livelihood depends on the ability to travel, or that his ability to do so is preventing him from maintaining ties to close family members); see also *Trump v. Hawaii*, Oral Argument Transcript p.31 ln 1-10 (Justice Breyer noting that "undue [hardship] must be less than extreme [hardship]").

56. Thus the "undue hardship" requirement for a Proclamation waiver is lower than the 1182(i) waiver's requirement that the a United States citizen or lpr parent or spouse must suffer extreme hardship and is thus necessarily met upon the satisfaction of the waiver requirements under 1182(i).

**National Interest**

57. In considering whether an applicant's entry to the United States would be in the national interest, the DOS indicated in the same February 22, 2018 letter that "the applicant's

15

travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted." (Exhibits BBB, CCC).

58. Thus the "national interest" requirement for a Proclamation waiver is lower than the 1182(i) waiver's requirement that a United States citizen or lpr parent or spouse must suffer extreme hardship and is thus necessarily met upon the satisfaction of the waiver requirements under 1182(i).

**National Security/Public Safety**

59. In evaluating whether an applicant's entry would not pose a threat to the national security or public safety of the United States, the DOS indicated in its February 22, 2018 letter that the applicant does not constitute a threat to national security or public safety, "the consular officer considers the information-sharing and identity-management protocols and practices of the government of the applicant's country of nationality as they relate to the applicant. If the consular officer determines, after consultation with the Visa Office, that an applicant does not pose a threat to national security or public safety and the other two requirements have been met, a visa may be issued with the concurrence of a consular manager." (Exhibits BBB, CCC).

60. In fact, both the Proclamation and DOS Foreign Affairs Manual, provides that for a waiver of the Proclamation's entry restrictions in situations precisely identical to the instant case where the applicant "seeks to enter the United States to visit or reside with a

close family member (e.g., a spouse, child or parent) who is a U.S. citizen, LPR, or alien lawfully admitted on a valid NIV, and the denial of entry during the suspension period would cause the foreign national undue hardship." *See*, Proclamation § 3(c)(iv)(D); 9 FAM 302.14-10(C)(2)(a)(4) (titled "Waiver Examples"); *see also*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2406 (2018) (noting "§ 3(c)(i); see also § 3(c)(iv)" provide examples of when a waiver might be appropriate, ***such as if the foreign national seeks to reside with a close family member,*** obtain urgent medical care, or pursue significant business obligations).

61. Thus, by its own terms, the Proclamation waiver restates the requirements on the 1182(i) waiver, but requires the standards be satisfied by a significantly lessened standard.

62. Accordingly, USCIS approval of the 1182(i) waiver requires the consular officer to respect and follow the determination.

63. "Once a consular officer determines that an applicant meets all three criteria for waiver" and the Proclamation waiver is approved, "some immigrant visa applicants ***are required by the Immigration and Nationality Act or implementing regulations to submit certificates and other documentation that may have expired during the waiver process.*** For example, "[immigrant visa] applications are required to present valid police and medical certificates. If the information in these certificates has expired, the applicant may need to renew them. Finally, applicants must present valid passports to the consular officer prior to visa issuance." (Ex. CCC - February 22, 2019 Van Hollen Letter).

64. Thus even after the Proclamation waiver is approved, separate and apart from the waiver adjudication of the waiver, a visa applicant still must provide up to date compliance with all requirements that exist under the INA; however as explicitly stated by DOS, these documentary requirements are found in the INA and implementing regulations and are not part of the Proclamation waiver process. This requirement is only triggered after the Proclamation waiver is approved and the visa applicant must resubmit information that has expired during the adjudication of the Proclamation waiver.

**Legal Standards Governing a Consular Officer's Bad Faith**

65. Upon an "affirmative showing of bad faith on the part of the consular officer" which is "plausibly alleged with sufficient particularity" the Court may "look behind" a visa refusal. *Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015)

66. In fact "evidence of behind-the-scenes bad faith can overcome *Mandel*'s rule that courts must stick to the face of the visa denial in evaluating it." *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019). *See also*, *Bustamante v. Mukasey* , 531 F.3d 1059, 1062–63 (9th Cir. 2008) (establishing bad faith requires Plaintiff to "allege that the consular official did not in good faith believe the information he had").

67. Thus a consular officer acts in bad faith when dishonestly or disingenuously accepting the truth and veracity of a matter before the officer. See, *Yafai v. Pompeo*, 912 F.3d at 1022 (citing *Bad Faith* , BLACK'S LAW DICTIONARY (10th ed. 2014) (defining bad faith as '[d]ishonesty of belief, purpose, or motive").

68. Under DOS's procedures Mohamed's Proclamation waiver was approved and the information sought after the approval was merely information that had previously been submitted but expired and was completely unrelated to the Proclamation waiver. (Ex. CCC - February 22, 2019 Van Hollen Letter).

69. Further, since Mohamed had met all of the terms of the Proclamation waiver provision, was granted the Proclamation waiver; and complied with all the post-approval re-validation of previously submitted documents and certificates as required by the INA and the implementing regulations, Mohamed had complied with all the Proclamation waiver requirements, which raises the question: "How could the Government successfully claim that the Proclamation rests on security needs if it is excluding Muslims who satisfy the Proclamation's own terms?" *Trump v. Hawaii*, 138 S. Ct. 2392, 2430 (2018) (Breyer, J. dissenting).

### The State Department Not The Consular Officer Made The Final Determination of Eligibility For a Proclamation Waiver

70. On October 31, 2019 the Djibouti Embassy emailed counsel stating: "Case DJI2016637027 was refused appropriately per Presidential Proclamation 9645. ***The Department of State has determined that the visa applicant is not eligible for a waiver of the proclamation.  Our records indicate a refusal letter describing the ineligibility was provided to a representative of your office on October 3, 2019.***" (Exhibit XX).

71. The Djibouti Consular reiterated this same statement on July 2, 2020 stating: "Case DJI2016637027 was refused appropriately per Presidential Proclamation 9645. ***The Department of State has determined that the visa applicant is not eligible for a waiver***

***of the proclamation.***  Our records indicate a refusal letter describing the ineligibility was provided to a representative of your office on October 3, 2019." (Exhibit YY)

72. These two emails confirm that the Department of State's Visa Office in Washington, D.C. made the final waiver determination regarding denial of Mohamed's waiver application; not the consular officer in Djibouti. Thus, review of the waiver adjudication is precisely like review of immigration benefit determinations made by USCIS, subject to judicial review under the Administrative Procedure Act, and not governed by consular nonreviewability.

73. Further, the October 31, 2019 and July 2, 2020 email contradicts the April 30, 2019 email informing Plaintiffs that the State Department had *approved* the Proclamation waiver (Exhibit LL) and the DOS guidance providing that once the Proclamation waiver requirements are satisfied the applicant still must resubmit certain expired certifications and a current passport as required by the INA and its regulations in order to finish the visa issuance process (Exhibit BBB, CCC).

74. Thus, based on the consular officers representations, the Proclamation waiver adjudication process did not follow the procedures established by DOS for waivers as DOS is not permitted to adjudicate the waiver; and the once approved the documentary requirements under the INA its implementing regulations are separate and distinct for ineligibility under the Proclamation.

75. 8 U.S.C. § 1104(a) affords to consular officers complete and exclusive discretion over the issuance of visas, which the Secretary of State is explicitly prohibited from circumscribing or usurping.

76. However, DOS regulations provided that "[t]he Department may request a consular officer in an individual case or in specified classes of cases to submit a report if an immigrant visa has been refused." 22 C.F.R. § 42.81(d). "If the officer believes that action contrary to an advisory opinion should be taken, the case shall be resubmitted to the Department with an explanation of the proposed action. ***Rulings of the Department concerning an interpretation of law***, as distinguished from an application of the law to the facts, ***are binding upon consular officers.***" 22 C.F.R. § 42.81(d).

77. The Djibouti Consulate's explanations in this case clearly state that "***The Department of State has determined that the visa applicant is not eligible for a waiver of the proclamation.***" (Exhibit XX, YY).

78. Eligibility is a question of law separate and distinct from a decision to grant a benefit. *Sepulveda v. Gonzales*, 407 F.3d 59, 63-64 (2d Cir. 2005) (collecting cases).

79. Eligibility for a waiver is a legal determination exclusively within the powers of the Department of State and binding upon the consular officer, 22 C.F.R. § 42.81(d), and thus the eligibility determination is not subject to consular nonreviewability.

## CAUSES OF ACTION

### COUNT ONE
### Consular Officer's Visa Denial Was Made In Bad Faith

80. Since the consular officer possessed the approved 212(i) waiver that by its terms incorporates the factors of the Proclamation waiver, but requires the heightened standard of "extreme hardship", the consular officer's determination was made in bad faith as the consular officer is not empowered to re-adjudicate or reevaluate the decisions made by Department of Homeland Security and the consular officer's failure to accept the DHS's

hardship determination necessarily establishes bad faith as "a presumption of regularity attaches to the actions of Government agencies." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001).

81. The consular officer refusal to issue a visa pursuant to the Proclamation establishes "dishonesty of belief, purpose, or motive" as the consular officer knew the waiver was approved by the State Department; the consular officer knew that USCIS already found all the waiver standards to be met by a higher legal standard; and the consular officer repeatedly misled and outright lied about the status of Mohamed's application, including: ignoring the State Departments waiver approval; requesting Mohamed provide Form I-864A (Exhibit LL),then claiming that Plaintiffs provided the wrong form and were required to provide Form I-864 (Exhibit QQ - "This case is currently refused under INA section 221g. *To overcome this refusal, the joint sponsor should submit the form I-864.* ***They previously submitted the form I-864A.***"); claiming that the visa was refused on October 3, 2019 (Exhibit VV) when on October 17, 2019 the consular officer emailed Plaintiffs' counsel stating the visa application was still being reviewed in light of the submission of the I-864. Since both of these representations cannot simultaneously be true, the consular officer necessarily must have lied.

82. The consular officer's explanations for their own actions contradict themselves and  since the consular officer knew someone of the false representations and the approved waiver, then factually incorrect misrepresentations necessarily include '[d]ishonesty of belief, purpose, or motive." *Bad Faith,*BLACK'S LAW DICTIONARY (10th ed. 2014).

83. Additionally, in the context of the other inconsistencies in Mohamed's visa application the consular officer's lies establish that a dishonest motive in adjudicating Mohamed's visa application as the several misrepresentations and lies at each turn, considered as a whole, establish a pattern of adjudicating the waiver request in a manner where the law was not being applied neutrally to the facts, but rather the consular officer was seeking to justify a predetermined decision to deny the waiver -- a dishonest motive.

## COUNT TWO
### Violation of the Administrative Procedure Act
### (5 U.S.C. § 701 et seq.)

84. Plaintiffs restate and incorporate by reference the allegations contained in the foregoing paragraphs, as if set forth fully herein

85. The APA empowers a reviewing court to: "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action" 5 USC § 706; "compel agency action unlawfully withheld or unreasonably delayed" 5 USC § 706(1); and to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right, power, privilege or immunity...short of statutory right…without observance of procedure required by law…[or] unsupported by substantial evidence." 5 USC § 706(2).

86. "Agency action" includes "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 USC § 551(13). The APA further requires agencies to conclude matters presented to them "within a reasonable time." 5 USC § 555.

87. Further, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

88. The APA requires Defendants to "examine the relevant data and articulate as satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfr. Ass'n v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

89. The APA prohibits agency decisions which are based on erroneous legal conclusions and misapplication of applicable law. *SEC v. Chenery*, 318 U.S. 80, 94 (1943); *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 86-87 (2d. Cir. 2006).

90. Defendant DOS's determination that Mohamed was ineligible for a Proclamation waiver violates  APA 5 U.S.C. 706(2) which requires a court "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right, power, privilege or immunity...short of statutory right…without observance of procedure required by law…[or] unsupported by substantial evidence." 5 USC § 706(2).

91. Defendant DOS's determination that Mohameed was ineligible for a proclamation waiver in spite of Mohamed's clear eligibility under the undisputed facts in this case and in light of the fact that the  Djibouti Embassy had already approved the Proclamation waiver.

92. Defendant DOS determination that Mohamed was ineligible for a Proclamation waiver was based on a factual conclusion that the Defendants knew was factually incorrect at the time of the decision as the Defendants possessed evidence clearly establishing

Mohamed's eligibility and the previous agency determination that Mohamed did in fact establish eligibility for the same standards but to at the higher degree of "extreme hardship."

93. Thus Defendant DOS determination that Mohamed was ineligible for a Proclamation waiver necessarily violated 5 USC § 706(2).

## COUNT THREE
### Violation of the Fifth Amendment Right to Procedural Due Process

94. Plaintiffs restate and incorporate by reference the allegations contained in the foregoing paragraphs, as if set forth fully herein.

95. The Supreme Court and the Second Circuit Court of Appeals have definitively established that ***the Fifth Amendment Due Process Clause requires agencies to follow their own procedural rules***. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 268 (1954). Specifically, under *Accardi*, when the Government creates *a regulatory process for obtaining relief*, a "right to seek relief" is created, even if the individual would lack a "right to the relief itself." *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (citing *Accardi*, 347 U.S. at 268)).  Moreover, "'[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures… even where the internal procedures are possibly more rigorous than otherwise would be required,' ***and even though the procedural requirement has not yet been published in the federal register***" (emphasis added) *Montilla v. INS*, 926 F. 2d 162, (2d Cir. 1991) citing *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974)).

96. In *Morton v. Ruiz*, the Supreme Court required the agency to follow its own internal procedures contained in the Bureau of Indian Affairs Manual, establishing that ***an agency***

**_"must comply, at a minimum, with its own internal procedures"_** (emphasis added). (_See Morton v. Ruiz_, 415 U.S. at 235). Further, **_an agency's internal procedures give rise to a "legitimate expectation" that the agency will follow its own internal adjudication procedures, which cannot be "extinguished" by an ad hoc determination of the agency to disregard its own established procedures_**. _Morton v. Ruiz_, 415 U.S. at 236). _See also, Church of Scientology of Cal. v. United States,_ 920 F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the _Accardi_ doctrine, an administrative agency is required to adhere to its own internal operating procedures."); _see also Romeiro de Silva v. Smith,_ 773 F.2d 1021, 1025 (9th Cir. 1985) (finding that the former INS can be bound by "operational instructions").

97. Further, "[t]he _Accardi_ doctrine is premised on fundamental notions of fair play underlying the concept of due process. . . . Its ambit is not limited to rules attaining the status of formal regulations. _Montilla v. Immigration and Naturalization Service_, 926 F.2d 162, 167 (2d Cir. 1991).

98. Finally, as the Second Circuit has recognized, an _Accardi_ claim is a free-standing claim under the Fifth Amendment. See, _Montilla v. Immigration and Naturalization Service_, 926 F.2d 162 (2d Cir. 1991).

99. By failing to follow the established agency procedures and rules governing the adjudication of Proclamation waivers, including 22 C.F.R. § 42.81(d); failure to apply the articulated standards in proclamation, the Van Hollen Letter, and the FAM, the Defendants has violated the _Accardi_ Doctrine.

### COUNT FOUR
**Violation of the Fifth Amendment Right to Procedural Due Process**

100.   Plaintiffs restate and incorporate by reference the allegations contained in the foregoing paragraphs, as if set forth fully herein.

101.   Procedural Due Process requires that procedural application of the law be fair and just, such that individuals are not subjected to the arbitrary exercise of governmental authority. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

102.   By denying Mohamed's waiver application based for unknown reasons after Mohamed has already clearly established eligibility, and the decision was contrary to the information contained in the consular officer's file, the denial was neither facially legitimate or bona fide.

103.   The consular officer's repeated lies regarding the status of Mohamed's application and a failure to follow the waiver approvals issued by USCIS and DOS finding that Mohamed was not inadmissible under either the INA and approving Mohamed's waiver under the Proclamation violate Mr. Alzokari's right to due process of law under the Fifth Amendment to lawful and fair adjudication of his petition to sponsor his son to reside with him in the United States; a petition in which Mr. Alzokari has a entitlement to fair adjudication of a non-discretionary entitlement which is protectable under the Fifth Amendment.

104.   Since the decision was  wrongful and arbitrary, Mr. Alzokadi was deprived of his right to procedural due process under the Fifth Amendment as the I-130 Petitioner.

**COUNT FOUR**
**Violation of the Administrative Procedure Act**
**(5 U.S.C. § 553)**

105.   Plaintiffs restate and incorporate by reference the allegations contained in the foregoing paragraphs, as if set forth fully herein.

106.   "[W]hen an agency promulgates regulations other than 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice,' 5 U.S.C. § 553(b)(A); the statute provides the public with pre-promulgation notice and comment. 5 U.S.C. § 553(b), (c). That entails general notice of proposed rulemaking published in the Federal Register, *id.* § 553(b), and an opportunity for interested parties to comment on and otherwise participate in the rulemaking § 553(c)." *Alcaraz v. Block*, 746 F.2d 593, 610-11 (9th Cir. 1984).

107.   The Proclamation has created entirely new grounds for visa ineligibility and entirely new grounds for a waiver to this ineligibility and thus are not "rules of agency organization, procedure, or practice" and likewise are neither interpretive rules or general statements of policy, and thus the agency rules governing the Proclamation waiver are subject to the notice-and-comment rulemaking requirements of  5 U.S.C. § 553.

108.   Defendants have not promulgated any rules governing the Proclamation waiver process and this failure to promulgate the waiver rules in accordance with 5 U.S.C. § 553 necessarily violates the APA.

## COUNT FIVE
## Declaratory Judgment Act
### (28 U.S.C. § 2201)

109.   Plaintiffs restate and incorporate by reference the allegations contained in the foregoing paragraphs, as if set forth fully herein.

110.    Plaintiffs respectfully request this honorable court to issue an order under 28 U.S.C. § 2201 declaring Mohamed satisfaction of the waiver requirements under section 1182(i) establish Mohamed's eligibility as a matter of law for a waiver under the Proclamation.

111.    Plaintiffs further request this honorable Court to declare that as a matter of law

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare unlawful and set aside Defendants' refusal of Mohamed's immigrant visa.

2. Declare that Defendants' refusal of Mohamed's immigrant visa application violates Mr. Alzokari's Fifth Amendment right to due process of law.

3. Declare as a matter of law that Mohamed is eligible for a waiver under the Proclamation.

4. Order to Defendants to immediately adjudicate Mohamed's visa application in accordance with applicable federal law and the order's of this Court.

5. Maintain jurisdiction over this matter to ensure Defendants' compliance with the orders of this Court.

6. Award Plaintiff's costs and reasonable attorney's fees; including but not limited to, costs and reasonable attorney's fees available under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

7. Grant other such relief as the Court may deem just and proper.

Dated: Bronx, NY

August 11, 2020                                    Respectfully submitted,

                                                   /s/ Julie Goldberg
                                                   Julie Goldberg, Esq.
                                                   GOLDBERG & ASSOCIATES
                                                   5586 Broadway, Third Floor
                                                   Bronx, NY 10463

Tel: (718) 432-1022
Email: ecf@goldbergimmigration.com
*Attorney for the Plaintiff*